944

ONONDAGA CO., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TEN EYCK CO., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23978, 23979.   Promulgated January 29, 1930.

*J. C. Murphy, Esq.*, and *Alfred W. Gray, Esq.*, for the petitioners.
*W. F. Gibbs, Esq.*, for the respondent.

946

OPINION.

VAN FOSSAN: In his brief the attorney for the petitioners attacks on various grounds the validity of assessment and collection of the tax under the conditions set forth in the findings of fact, the basic contention being that the waivers were not signed by the Commissioner personally. That brief contains the following statement:

The evidence in this case shows that the petitioner signed the waivers in good faith and filed them with the Commissioner of Internal Revenue. Had the Commissioner exercised his discretion and signed the writings, it would undoubtedly have created an exception which would have permitted the assessment of the tax after the expiration of the limitation period.

\* \* \* \* \* \* \*

The right to collect the tax was lost, not by any word or act of the petitioners, but by operation of law, and by reason of the failure of the Commissioner to exercise his discretion and sign the writing agreeing to assessment after the limitation.

On examination the waivers are found to bear the name of the then Commissioner accompanied by certain initials, reasonably indicating that they were signed on behalf of the Commissioner by another. Signature by the Commissioner personally is not necessary to make the waivers valid. *Perkins Land & Lumber Co.*, 9 B. T. A. 528; *Trustees for Ohio & Big Sandy Coal Co.*, 9 B. T. A. 617; *Greylock Mills*, 9 B. T. A. 1281; *National Piano Mfg. Co.*, 11 B. T. A. 46; *Pantages Theater Co.*, 17 B. T. A. 82. The assessment and collection of the tax are not barred by the statutory period of limitation.

As the second error the petitioners allege that the respondent determined that they were not affiliated with the United Hotels Co. during the year 1919 under section 240 (b) of the Revenue Act of 1918, which provides:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The petitioners originally filed their consolidated return as subsidiaries of the parent corporation, United Hotels Co. The respondent required them to file individual returns.

Under the facts set forth above we are unable to find the petitioners were affiliated with United Hotels Co. during the taxable year. The case comes squarely within the reasoning of the court in *Commissioner of Internal Revenue* v. *Adolph Hirsch & Co.*

(C. C. A., 2d Cir.), 30 Fed. (2d) 645. In that case the Hirsch brothers owned 94.85 per cent of the stock of Adolph Hirsch & Co. and 55.63 per cent of the Brazilian Co. The Bloomberg family owned the remaining 44.37 per cent of the second company. Bloomberg was the personal attorney for the Hirsch brothers, had been intimately associated with them for years, and was the attorney who organized the second company. The affairs of the Brazilian Co. were handled by the Hirsch brothers, first through a partnership and later through the corporation, Adolph Hirsch & Co. No regular set of books was kept regarding the affairs of the Brazilian Co.; that is, there was no ledger, cash book, or sales book, and since 1913 it had no separate bank account.

All activities were commenced and managed entirely by the Hirsch Co.; funds necessary for the conduct of the affairs of the Brazilian Co. were advanced by the Hirsch Co. by cable, by transferring or opening a bank credit against which a draft would be made by people in Brazil. Sales were made through and in the name of the Hirsch Co., and the proceeds were credited on the books of the Hirsch Co. In a word, the Brazilian Co. was conducted as a department of the Hirsch Co.'s business. No stock of either company was sold to the general public.

Commenting on these facts, the court said:

* * * We may regard the Hirsch brothers as of the same " interest." " Substantially all " was not intended to be interpreted as being any particular percentage, but must be applied to the particular facts of each case. We held in *Ice Service Corp.* v. *Commissioner of Internal Revenue*, 30 Fed. (2d) 230, decided January 7, 1929, that 75 per cent. was not a control of " substantially all " of the stock. In the Revenue Acts of 1924, 1926 (section 240 (c), 43 Stat. 253, 44 Stat. 9; 26 USCA sec. 993 (c), and 1928 (sections 141 (d), 142 (c), Pub. No. 562, 70th Congress; 26 USCA secs. 2141 (d), 2142 (c), Congress has substituted for " substantially all " of the stock the words " at least 95 per cent of the stock."

The court said further:

* * * The management of the business of the corporation is not the control required by the statute. It refers to stock control. The fact that the minority is acquiescent, and permits the majority to manage the business, does not prove actual control over the minority interests. Nor does a control based upon friendship or professional relations satisfy the statute. The control of the stock owned by the same interest refers to beneficial interest. This meaning is consistent with the purpose of the statute to extend to those subject to the hazard of the enterprise, when they are substantially one and the same, the benefit of the consolidated reports.

Applying the principles announced by the court, the fact that there was a close personal or professional relationship among the various stockholders or that certain of them were appointees or employees of Rockwell is not controlling. Nor is the fact that the operations

were entirely dominated by the executive committee sufficient. The acquiescence of minority stockholders and the covenant of certain stockholders to offer their stock to the majority before sale elsewhere are to be similarly viewed. The stock control requisite to achieve affiliation must be more tangible and real. The aggregate of a number of inadequate conditions does not constitute the control required by the statute.

A study of the tabular statement included in the findings of fact showing the distribution of stock holdings and other proven facts fails to disclose that one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the petitioning companies.

We are confronted with the same result when the facts are studied in an attempt to find the existence of ownership or control of substantially all of the stock of the several corporations by the same interests.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRAMMELL concurs in the result only.